UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Richard Twiggs, ) | |
| ) | |
| *Plaintiff* ) | |
| ) | COMPLAINT AND |
| v. ) | DEMAND FOR JURY TRIAL |
| ) | |
| University of Holy Cross, ) | |
| ) | |
| *Defendant* ) | |

## I. PARTIES AND SERVICE

Plaintiff Richard Twiggs, through counsel, complains against the defendant as follows:

1. Richard Twiggs is a resident of New Orleans, Louisiana.

2. Ms. Elizabeth Berger, plaintiff's supervisor, was the Director of the Counseling and Training Center.

3. University of Holy Cross ("Employer") is a domestic non-profit organization with its principal place of business in New Orleans, Louisiana.

4. Ms. Michaela Hartline ("Ms. Hartline") is the Administrative Assistant to Dean Carolyn White.

5. Dr. Carolyn White ("Dean White") is the Dean of the College of Counseling, Education, and Business and the Chair of the Department of Counseling & Behavioral Sciences.

6. Professor White is a professor at the University of Holy Cross.

7. Ms. Christine Watts is the Director of Human Resources at the University of Holy Cross.

8. Plaintiff Richard Twiggs commences this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), which in relevant part prohibits sexual harassment, discrimination in employment based upon an employee's sex, and retaliation against an employee for her complaints of sexual harassment.

9. Plaintiff Richard Twiggs additionally brings supplemental state law claims against co-employee Michaela Hartline for assault, battery and the intentional infliction of emotional distress.

## II. JURISDICTION & VENUE

10. This Court has proper subject matter jurisdiction over plaintiff's federal claims under 28 U.S.C. sec. 1331 and 42 U.S.C. sec. 2000e-5(f); and this Court has proper supplemental jurisdiction over the state law claims for assault, battery and intentional infliction of emotional distress pursuant to 28 U.S.C. sec. 1367(a).

11. Jurisdiction over the federal claims are ripe in that a right-to-sue letter was issued by the Equal Employment Opportunity Commission on July 28, 2020, based upon a charge affidavit timely filed with both the Equal Employment Opportunity Commission ("EEOC") and the Louisiana Human Rights Commission ("LHRC").

12. This Court has jurisdiction over this matter under 28 U.S.C. § 1331, 29 U.S.C.§ 2617, and 42 U.S.C. § 2000e-5 (incorporated into the ADA via 42 U.S.C. § 12117) because this matter involves controversies arising under the laws of the United States, including the ADA.

13. Venue is proper in the Eastern District of Louisiana, under 42 U.S.C. § 2000e-5(t), and 28 U.S.C. § 1391(b) and (c), because Defendant regularly conducts business in this District and the events forming the basis of the suit occurred in this District. This action properly lies in the Eastern District Court of Louisiana pursuant to 29 U.S.C. sec. 1391(b), because the claim arose in this judicial district, and pursuant to 42 U.S.C. sec. 2000e-5(f)(3)

### III. PROCEDURAL HISTORY

14. On February 8, 2019, Plaintiff dual-filed a Charge of Discrimination against Defendant with the Louisiana Commission on Human Rights and the U.S. Equal Employment Opportunity Commission (the "Charge").

15. On July 28, 2020, the EEOC issued its Dismissal and Notice of Rights to Plaintiff ("EEOC Right to Sue").

16. This action is filed within ninety (90) days of Plaintiffs receipt of the EEOC Right to Sue. Thus, all administrative prerequisites have been met or have expired.

17. Declaratory and equitable relief is sought pursuant to 28 U.S.C. sec. 2201, 2202, and 42 U.S.C. sec. 2000e-5(g)(1). Compensatory and punitive damages are sought pursuant to 42 U.S.C. sec. 1981(a).

18. Costs and attorney's fees may be awarded pursuant to 42 U.S.C. 2000e-5(k) and Rule 54 of the Federal Rules of Civil Procedure.

19. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

### IV. FACTUAL SUMMARY

20. Mr. Twiggs was employed at the Thomas E. Chambers Counseling and Training Center at the University of Holy Cross. He was a graduate assistant in the Summer of 2017 (for

the Counseling Department) and the Office Manager (of the Counseling Center) from the Fall of 2017 to the Spring of 2018.

21. At all times relevant hereto, Mr. Twiggs was a competent, qualified, loyal and conscientious employee.

**V.  SEXUAL HARASSMENT**

22. According to *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 (5th Cir. 2013), for harassment to be actionable, it has to be sufficiently severe or pervasive to change the plaintiff's employment atmosphere thus creating an abusive environment.  Offensive conduct that includes teasing, comments, or mild isolated incidents is not enough to be considered pervasive. As it has been demonstrated these are not isolated incidents. These incidents are pervasive due to duration, frequency, intensity, and maliciousness with intent to cause anxiety, fear, and distress.

23. During the course of Mr. Twigg's employment, Ms. Hartline repeatedly made sexually explicit comments about penises to the plaintiff.

24. While working in the Department of Counseling & Behavioral Sciences, Ms. Hartline aggressively pursued the plaintiff.

25. The plaintiff pleaded with Ms. Hartline to stop the harassment.  Ms. Hartline would halt her actions for a few days and sometimes even a week, but, nevertheless, she resumed her previous pursuit of the plaintiff.

26. More specifically, Ms. Hartline persistently and ubiquitously would caress the plaintiff's buttock, while thrusting two fingers into the plaintiff's anus. The plaintiff relentlessly implored with Mr. Hartline to stop the assault and harassment.  The plaintiff was subjected to this abuse from June of 2017 until his termination of employment in May of 2018.

27. On at least one occasion, Dean White witnessed Ms. Hartline caressing the plaintiff's buttock, while thrusting her fingers into the plaintiff's anus. Additionally, Dean White's grandson, Ryan White, and Elizabeth Berger, the former Director of the Counseling and Training Center, were witnesses on different occasions.

28. Ms. Hartline's sexual advances and assaults were never reciprocated by the plaintiff. In fact, quite the opposite is true. The plaintiff demanded Ms. Hartline stop these actions.

29. After months of the plaintiff aggressively withdrawing from as much contact as he could control from Ms. Hartline, she became verbally abusive.

30. On one occasion, Ms. Hartline asked the plaintiff "are you on your period?" She further inquired, "is it that time of the month again?" Additionally, she questioned if the plaintiff had "stopped bleeding yet?"

31. Throughout Ms. Hartline's intimidation and harassment, Mr. Twiggs would report her conduct to Ms. Berger who was his immediate supervisor.

32. Article 3 of the University's Anti-Harassment Policy states, "Individuals who believe they have been the victims of conduct prohibited by this [anti-harassment] policy statement or believe they have witnessed such conduct <u>should discuss their concerns with their immediate supervisor *or*</u> Office of Human Resources."

33. Ultimately, Ms. Berger reported everything to Dr. Dorothy Martin, the Coordinator of Practicum and Internship. Ms. Berger reported both the physical and verbal harassment to Dr. Martin.

34. Dr. Martin advised the plaintiff to simply "confront Michaela about it."

35. Unbeknownst to the plaintiff, Ms. Berger met with Dr. Roy Salgado, senior professor, Title IX Coordinator and President of the Faculty Assembly.

36. Dr. Salgado told Ms. Berger he would recommend that neither Ms. Berger nor the plaintiff bring their grievances to Human Resources. He advised that by going to Human Resources they would effectively "be signing [their] own papers."

37. On April 27, 2018, the Equal Employment Opportunity Commission conducted a training on harassment and bullying. Dr. Roy Salgado recommended that the plaintiff attend the training. Dean White angrily told the plaintiff that "if Michaela cannot be here than neither can you."

38. After the training, Dean White approached Ms. Berger and asked why the EEOC came to the office. Ms. Berger responded that she was unsure. Dean White proceeded to mockingly state "it must be due to all of the sexual harassment going on around the university." Dean White then heatedly looked at the plaintiff.

39. Ms. Hartline then proceeded to say "so the EEOC talked about sexual harassment? That's a shame. I guess I can't touch Ricky's butt anymore." At this time, the plaintiff decided that he needed to schedule an appointment with Human Resources.

40. On April 27, 2018, the plaintiff scheduled a meeting with Human Resources for May 1, 2018.

41. On May 1, 2018, plaintiff met with the Director of Human Resources, Ms. Christine Watts.

42. Ms. Berger had also spoken with Ms. Watts the prior week on April 23, 2020.

43. On May 1, 2018, Ms. Watts told the plaintiff that while she would do everything to protect the plaintiff she could not guarantee that she would be able to protect him "due to the procedures and regulations of the university."

44. In order for the sexual harassment discrimination (under hostile work environment) claim to be satisfied Mr. Twiggs must meet the following: "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [sex]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). These requirements set forth by the Louisiana Court's are satisfied as follows:

a) Mr. Twiggs was subjected to unwelcome harassment / discrimination;

b) Mr. Twiggs did complain to his supervisor, Ms. Berger, about sexual harassment and retaliation;

c) Mr. Twiggs, a male, was subjected to "poking" of his butt, attempts and success at "fingering" his anus through his pants material, and "slapping" his butt; and

d) Mr. Twiggs was subjected to sexual harassment which affected his term, condition, and privilege of employment. The sexual harassment made Mr. Twiggs uncomfortable where he had to go to counseling, the events were emotionally disturbing to Mr. Twiggs and he felt unwelcomed in his place of work.

45. The University of Holy Cross handbook states, "to report harassment to a supervisor," which Mr. Twiggs did. He reported the sexual harassment to his supervisor, Ms. Berger. Mr. Twiggs satisfied the requirement of reporting as outlined in the University of Holy Cross handbook. He acted reasonably and within the University of Holy Cross harassment policy guidelines.

46. The actions taken by the University employees, such as Ms. Hartline, Ms. Berger, Dr. Martin, Dean White, and Professor White are clearly outlined to be severe and pervasive that no reasonable individual would be able to work in that environment.

47. As a result of the discrimination, Mr. Twiggs became physically and emotionally ill. He has been treating with a local therapist over the course of several months.

**VI. AMERICANS WITH DISABILITIES ACT**

48. In May 2017, Plaintiff was diagnosed with the disability of Crohn's disease, which was actively and substantially limiting Plaintiffs proper digestive and bowel functions, including requiring the need for far more frequent bathroom breaks than the average person. The need occurs with severe urgency and sudden onset, making it unpredictable when the need would occur to reach a bathroom in time to avoid soiling himself.

49. After submitting his official request for reasonable accommodations, Plaintiff was subject to a barrage of hostile behavior by Dean White. Dean White frequently called Plaintiffs coworkers over to Plaintiffs desk to scrutinize Plaintiffs work and began overloading Plaintiff with work. Dean White would shout at and mock the Plaintiff. Dean White would reprimand Plaintiff while letting the same mistakes from others go unpunished or remarked upon.

50. On several occasions, Dean White began demanding Plaintiff could not leave his desk. She instructed the plaintiff that the desk "must always be monitored by him."

51. Mr. Twiggs did indeed maintain a presence at the front desk, however, he was not required to in his official job description.

52. He could freely leave the desk if he had coverage for the desk, which he always did.

53. Not leaving the desk for hours on end is virtually impossible for a person who suffers from an irritable bowel disease. Plaintiff reminded Dean White of the biological impossibility,

even for a healthy person, of predicting the need for a bathroom break and going to the bathroom accordingly. The need for an extended bathroom break due to his Crohn's symptoms would necessarily involve a sudden onset of such symptoms.

54. During the Equal Opportunity Employment Investigation, Dean White agreed with Ms. Berger that Mr. Twiggs always had someone at the desk when he could not be there to fulfill his other duties, go to the bathroom, and go to lunch.

55. Dean White admitted that she has had numerous performance related issues to Mr. Twiggs, despite Dean White not being his supervisor.

56. During the EEOC investigation, Dean White never denied telling Mr. Twiggs that he was not allowed to use the bathroom.

57. Ms. Berger states in her affidavit that Dean White did indeed tell her that, "Ricky needs to leave the desk at assigned times and that means his bathroom breaks, lunch, and to move videos." This is evidenced in a February 21, 2018 email.

58. Dean White told Mr. Twiggs that he could no longer leave his desk when he needed to for any reason, including the bathroom as corroborated by Ms. Berger.

59. Dean White claimed that she "noticed that he was not at the desk," "frequently absent from the desk," "he left the desk unattended" and that she "had numerous performance related complaints".

60. Mr. Twiggs was concerned that if he went to the bathroom Dean White would "write him up."

61. A prima facie claim for failure to accommodate requires that: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable

accommodations' for such known limitations." *Neely v. PSEG Texas, Ltd. P' ship*, 735 F.3d 242, 247 (5th Cir. 2013). Mr. Twiggs satisfies these requirements as shown below:

a) Mr. Twiggs is a qualified individual with a disability;

b) Mr. Twiggs's limitations were known as corroborated by Dean White and thus the employer, as stated in the University's Position Statement and Mr. Twiggs's statement;

c) Mr. Twiggs was told that he was no longer allowed to go to the bathroom when needed (as stated in his report and stated to Ms. Berger). His bathroom breaks were a reasonable accommodation that were not met.

62. "Under the ADA, it is unlawful for an employer to fail to accommodate the known limitations of an employee's disability." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011).

### VII. RETALIATION

63. Upon information and belief, it is apparent from the report, his charge, emails, and numerous other corroborating statements, that Mr. Twiggs and others did report these events.

64. If management was not made aware from any of the supervisors in question then that is not the fault of the victim.

65. The University allowed Dean White the power, the means, and the ability to create a system that was incredibly hostile and not adequate to protect Mr. Twiggs.

66. Nonetheless, Mr. Twiggs satisfied the requirement of reporting to his supervisor both orally and written in documentation.

67. In order for Mr. Twiggs to establish a prima facie case of retaliation, he must prove that: "(1) he engaged in a protected activity; (2) the exercise of his civil rights was known to the

defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000).

68. Mr. Twiggs reported discrimination to Ms. Berger, his supervisor. Ms. Berger reported sexual harassment to Dr. Martin, supervisory position over her and Dr. Roy Salgado (Title IX Coordinator).

69. Mr. Twiggs reported Dean White's husband, Professor White, for being abusive and aggressive. Dean White began threatening to fire Mr. Twiggs, stating Mr. Twiggs's job description was wrong, and forcing him out of the Doctoral Program because he could not go to class, and be at the front desk at the same time.

70. On February 21, 2018, Mr. Twiggs asked Ms. Berger if it would still be ok for him to go to the bathroom and use her office as a cool down space.

71. After Mr. Twiggs reported getting sexually harassed to Ms. Berger. Ms. Berger reported to those in a supervisory role over her.

72. This resulted in Dean White and Dr. Martin attempting to find evidence of Mr. Twiggs not fulfilling his job duties.

73. On March 5th 2018, Dean White refused to allow Ms. Berger to help Mr. Twiggs with a suicidal client, because that would be above his 'professional duties.'

74. In March of 2018, Professor White and Dr. White stating that the videos were in the wrong areas which Dr. Carolyn White would yell, humiliate, and demean him about even though Mr. Twiggs showed her that the videos were in the right place.

75. Professor White attacked the character and professionalism of Mr. Twiggs to his class.

76. The week after the EEOC meeting at the University, Dean White began to attack Mr. Twiggs with increased intensity, increasing work hours, further accusations and threats of not doing his job, demanding reports that he was not trained on nor told that he needed within a reasonable timeframe, telling Mr. Twiggs that he could write the reports anyway that he wanted too and then telling him that they were wrong, accusing him of not being at the desk, and other hostile remarks to incite anxiety, fear, and, an eventual resignation.

### VIII. CONSTRUCTIVE DISCHARGE

77. A constructive discharge occurs when an employee quits their job under circumstances that are treated as an involuntary termination. If an employee's working conditions are deliberately made so intolerable that the employee is forced to involuntarily resign, such constitutes a constructive discharge. (quoting *Young v. Sw. Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir.1975).

78. The "reasonable employee" test is an objective test of whether a reasonable person in the employee's shoes would have felt compelled to resign. (citing *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 n. 19 (5th Cir.1994))

79. Plaintiff was constructively let go on or about April of 2018.

80. Ms. Watts later advised that it would probably be best if the plaintiff resigned from his position because "people outgrow places."

81. The adverse employment action was that Mr. Twiggs was encouraged to resign by numerous members, when Mr. Twiggs brought this (that he was being forced out) concern to Human Resources, Ms. Watts stated, "it would probably be best to move on." This is admission of a constructive discharge and this was never denied by the responding party in their position statement.

82. At this point, the plaintiff felt that he had no option other than to leave his position. He was not afforded any protections or formal grievance process. He was essentially terminated from his position.

83. During this entire discriminatory time (Fall-Spring) it is admitted that Ms. Berger is Mr. Twiggs' supervisor. The evidence of this is documented by his job description in which it specifically states that he reports to the Director of the Counseling and Training Center. No where in his job description does it say that he reports to Dean White.

84. Throughout his tenure at the University of Holy Cross Mr. Twiggs endured discriminatory practices from his co-workers. He was the victim of sexual harassment, disability violations, retaliation, and constructive discharge. Mr. Twiggs makes this very clear in his EEOC Charge and Report that the sexual harassment occurred multiple times, he was told not go to the bathroom, he did not resign on his own volition, and that he was subjected to undeniable, blatant, harsh, and demeaning retaliation.

85. Mr. Twiggs asserts in his meeting with Dr. Landry, and has made it clear, that he did not resign under his own volition.

86. The University of Holy Cross acted, in part, and as whole to encourage his resignation and preserve the system that has been created.

87. The conduct complained of above, including actions and omissions, proximately caused Mr. Twiggs to suffer mental, emotional and psychological damages, as well as lost compensation.

IX. CAUSES OF ACTION

COUNT ONE:        Title VII

88. Plaintiff repeats and incorporates by reference paragraphs 24 - 49.

89. The intentional conduct and actions by Defendant through its agents constitute unlawful employment practices (sexual harassment) that discriminated against plaintiff with respect to his terms, conditions and/or privileges of employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e-2(a)(1).

**COUNT TWO:   FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA**

90. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

91. At all times relevant, Defendant was an "employer" and Plaintiff was an "employee," as those terms are defined by the ADA.

92. Plaintiff had a disability, within the meaning of the ADA, at the time that Defendant denied Plaintiff's reasonable accommodation request.

93. Plaintiff was able to perform his essential duties with reasonable accommodations, but the reasonable accommodations were denied by Defendant.

94. Defendant's actions as described above were malicious or with reckless indifference to Plaintiff's protected rights.

95. As a direct and proximate consequence of Defendant's violation, Plaintiff has suffered damages.

96. Plaintiffs damages include past and future lost wages, past and future lost medical healthcare benefits, past and future mental anguish, inconvenience, and loss of enjoyment of life.

97. Plaintiff seeks damages, exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT THREE:   HARASSMENT IN VIOLATION OF THE ADA**

98. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

99. Defendant's conduct with respect to Plaintiffs disability was sufficiently severe or pervasive to alter the terms or conditions of Plaintiffs employment and created a hostile or abusive work environment.

100. Defendant knew, or in the exercise of reasonable care should have known, that Plaintiff was being harassed based on his disability.

101. Defendant's actions as described above were malicious or with reckless indifference to Plaintiffs protected rights.

102. As a direct and proximate consequence of Defendant's violation, Plaintiff has suffered damages.

103. Plaintiffs damages include past and future lost wages, past and future lost medical healthcare benefits, past and future mental anguish, inconvenience, and loss of enjoyment of life.

104. Plaintiff seeks damages, exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT FOUR:    RETALIATION AND CONSTRUCTIVE DISCHARGE**

105. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

106. By constructively terminating plaintiff because he complained about sexual harassment, failure to accommodate and a hostile work environment defendants violated his rights under Title VII, 42 U.S.C. 1981.

**WHEREFORE**, the Plaintiff Richard Twiggs respectfully requests that this Court:

(a)    Enter judgment in his favor;

(b)    Declare the conduct engaged in by defendant to be in violation of plaintiff's rights;

(c) In lieu of reinstatement, order front pay and benefits for the period remaining until normal retirement;

(d) Award plaintiff back pay, benefits and prejudgment interest up to the date of reinstatement or front pay and benefits accrual;

(e) Award plaintiff compensatory damages;

(f) Award plaintiff punitive damages;

(g) Award plaintiff costs, expert witness fees and attorney's fees pursuant to 42 U.S.C.A §§1981a, 1988 and 42 U.S.C. sec. 2000e-5(k); and

(h) Grant plaintiff such other, further relief as the Court may deem just and proper.

(i) Enter declaratory judgment against Defendant Westward and in favor of Plaintiff Harvill recognizing that Defendant Westward has violated Plaintiff's rights guaranteed by Title VII;

(j) Enter declaratory judgment against Defendant Rogers and in favor of Plaintiff Harvill recognizing that Defendant Rogers has violated Plaintiff's rights to be free from assault, battery and the intentional infliction of emotional distress;

(k) Enter judgment against Defendants in favor of Plaintiff Harvill for full compensatory damages;

(l) Enter judgment against Defendant equitable relief, including reinstatement, and/or front pay;

(m) Enter judgment against Defendant Westward in favor of Plaintiff Harvill for an amount of punitive damages sufficient to punish and deter Defendant Westward's discrimination against Plaintiff Harvill and other female employees;

(n) Enter judgment against Defendant Rogers in favor of Plaintiff Harvill for an amount of punitive damages sufficient to punish and deter Defendant Rogers

(o) Enter judgment against Defendant Westward and in favor of Plaintiff Harvill for the amount of unpaid, and underpaid, overtime that Defendant has failed and refused to pay in violation of the FLSA;

(p) Find that Defendant Westward violation of the FLSA was willful;

(q) Enter judgment for Plaintiff Harvill and against Defendant Westward for liquidated damages in an amount equal to the amount of unpaid overtime;

(r) Order Defendant Westward to reinstate Plaintiff Harvill under conditions that conform to the FLSA, or in the alternative, to pay Plaintiff Harvill an appropriate amount of front pay;

(s) Enter an award in favor of Plaintiff Harvill, against Defendant Westward to pay Plaintiff Harvill's reasonable attorney's fees and costs, pursuant to Title VII, 42 u.s.c. §1988 and 28 u.s.c. §216;

(t) Grant Plaintiff Harvill a trial by jury on all issues so triable; and

(u) Grant Plaintiff Harvill any and all additional relief to which she may appear to be entitled.

Respectfully submitted:
*LAW OFFICE OF BERNARD L. CHARBONNET, JR., APLC*

_____
**DAVID M. FINK (La. Bar No. 33550)**
**BERNARD L. CHARBONNET, JR. (La. Bar No. 4050)**
One Canal Place
365 Canal Street, Suite 1100
New Orleans, Louisiana 70130
Phone: (504) 561-0996
Fax:    (504) 561-7850
Email: dfink@charbonnetlaw.com

*AND*

*LAW OFFICE OF DESIREE M. CHARBONNET, L.L.C.*
**DESIREE M. CHARBONNET (La. Bar No. 24051)**
Attorney for Petitioner
One Canal Place
365 Canal Street, Suite 1100
New Orleans, Louisiana 70130
Phone: (504) 399-3374
Fax: (504) 561-7850
Email: dcharbonnet@desireelaw.com

**PLEASE SERVE**
University of Holy Cross
Through its registered agent:
Leopold Z. Sher
909 Poydras St., Ste. 2800
New Orleans, LA 70112