UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RICHARD TWIGGS** | Civil Action No.: 2:20-CV-2879 |
| versus | Section: F |
| **UNIVERSITY OF HOLY CROSS** | Judge: MARTIN FELDMAN |
| | Magistrate Judge: DANA M. DOUGLAS |

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

The complaint (as amended) of Ricky Twiggs ("Plaintiff"), a person of the full age of majority domiciled in the Parish of Orleans, with respect represents as follows:

### I. DEFENDANTS

Made defendants herein are:

1. University of Holy Cross ("Employer") is a domestic non-profit organization with its principal place of business in New Orleans, Louisiana, which at all times relevant was Plaintiff's employer.

2. Ms. Michaela Hartline ("Ms. Hartline") is the Administrative Assistant to Dr. Carolyn White, who, at all times relevant was a co-employee of University of Holy Cross.

3. Dr. Carolyn White ("Dr. White") is the Dean of the College of Counseling, Education, and Business and the Chair of the Department of Counseling & Behavioral Sciences.

4. Talmadge "Gus" White ("Gus White") is an adjunct professor at the University of Holy Cross.

5. Ms. Christine Watts is the Director of Human Resources at the University of Holy Cross.

6. Plaintiff Richard Twiggs commences this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"),

which in relevant part prohibits sexual harassment, discrimination in employment based upon an employee's sex, and retaliation against an employee for her complaints of sexual harassment.

7. Plaintiff Richard Twiggs additionally brings supplemental state law claims against co-employee Michaela Hartline for assault, battery and the intentional infliction of emotional distress.

## II. JURISDICTION & VENUE

8. This Court has proper subject matter jurisdiction over plaintiff's federal claims under 28 U.S.C. sec. 1331 and 42 U.S.C. sec. 2000e-5(f); and this Court has proper supplemental jurisdiction over the state law claims for assault, battery and intentional infliction of emotional distress pursuant to 28 U.S.C. sec. 1367(a).

9. Jurisdiction over the federal claims are ripe in that a right-to-sue letter was issued by the Equal Employment Opportunity Commission on July 28, 2020, based upon a charge affidavit timely filed with both the Equal Employment Opportunity Commission ("EEOC") and the Louisiana Human Rights Commission ("LHRC").

10. This Court has jurisdiction over this matter under 28 U.S.C. § 1331, 29 U.S.C.§ 2617, and 42 U.S.C. § 2000e-5 (incorporated into the ADA via 42 U.S.C. § 12117) because this matter involves controversies arising under the laws of the United States, including the ADA.

11. Venue is proper in the Eastern District of Louisiana, under 42 U.S.C. § 2000e-5(t), and 28 U.S.C. § 1391(b) and (c), because Defendant regularly conducts business in this District and the events forming the basis of the suit occurred in this District. This action properly lies in the Eastern District Court of Louisiana pursuant to 29 U.S.C. sec. 1391(b), because the claim arose in this judicial district, and pursuant to 42 U.S.C. sec. 2000e-5(f)(3)

## III. PROCEDURAL HISTORY

12. On February 8, 2019, Plaintiff dual-filed a Charge of Discrimination against Defendant with the Louisiana Commission on Human Rights and the U.S. Equal Employment Opportunity Commission (the "Charge").

13. On July 28, 2020, the EEOC issued its Dismissal and Notice of Rights to Plaintiff ("EEOC Right to Sue").

14. This action is filed within ninety (90) days of Plaintiffs receipt of the EEOC Right to Sue. Thus, all administrative prerequisites have been met or have expired.

15. Declaratory and equitable relief is sought pursuant to 28 U.S.C. sec. 2201, 2202, and 42 U.S.C. sec. 2000e-5(g)(1). Compensatory and punitive damages are sought pursuant to 42 U.S.C. sec. 1981(a).

16. Costs and attorney's fees may be awarded pursuant to 42 U.S.C. 2000e-5(k) and Rule 54 of the Federal Rules of Civil Procedure.

17. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

## IV. FACTUAL SUMMARY

18. Mr. Twiggs was employed at the Thomas E. Chambers Counseling and Training Center at the University of Holy Cross. He was a graduate assistant in the Summer of 2017 (for the Counseling Department) and the Office Manager (of the Counseling Center) from the Fall of 2017 to the Spring of 2018.

19. At all times relevant hereto, Mr. Twiggs was a competent, qualified, loyal and conscientious employee.

## V. SEXUAL HARASSMENT

20. While working in the Department of Counseling & Behavioral Sciences, Ms. Hartline aggressively pursued plaintiff in an aggressive manner including making sexually explicit comments about penises to the plaintiff.

21. The plaintiff pleaded with Ms. Hartline to stop the harassment. Ms. Hartline would halt her actions for a few days and sometimes even a week, but, nevertheless, she resumed her previous pursuit of the plaintiff.

22. In addition to the explicit comments, Ms. Hartline persistently caressed plaintiff's buttocks, while thrusting two fingers into the plaintiff's anus. The plaintiff repeatedly demanded that Ms. Hartline stop the assault and harassment. The plaintiff was subjected to this abuse from June of 2017 until his termination of employment in May of 2018.

23. On at least one occasion, Dr. White witnessed Ms. Hartline caressing the plaintiff's buttock, while thrusting her fingers into the plaintiff's anus. Additionally, Dr. White's grandson, Ryan White, and Elizabeth Berger, the former Director of the Counseling and Training Center, were witnesses on different occasions.

24. Ms. Hartline's sexual advances and assaults were never reciprocated or welcomed by the plaintiff.

25. After Plaintiff withdrew from contact with Ms. Hartline to the greatest extent possible, Ms. Hartline became verbally abusive.

26. On one occasion, Ms. Hartline asked the plaintiff "are you on your period?" She further inquired, "is it that time of the month again?" Additionally, she questioned if the plaintiff had "stopped bleeding yet?"

27. Plaintiff reported Ms. Hartline's conduct repeatedly to Ms. Berger who was his immediate supervisor.

28. Article 3 of the University's Anti-Harassment Policy states, "Individuals who believe they have been the victims of conduct prohibited by this [anti-harassment] policy statement or believe they have witnessed such conduct should discuss their concerns with their immediate supervisor or Office of Human Resources."

29. Ultimately, Ms. Berger reported everything to Dr. Dorothy Martin, the Coordinator of Practicum and Internship.

30. Dr. Martin advised the plaintiff to simply "confront Michaela about it."

31. Unbeknownst to the plaintiff, Ms. Berger met with Dr. Roy Salgado, senior professor, Title IX Coordinator and President of the Faculty Assembly.

32. Dr. Salgado told Ms. Berger he would recommend that neither Ms. Berger nor the plaintiff bring their grievances to Human Resources.  He advised that by going to Human Resources they would effectively "be signing [their] own papers."

33. On April 27, 2018, the Equal Employment Opportunity Commission conducted a training on harassment and bullying.  Dr. Roy Salgado recommended that the plaintiff attend the training.  Dr. White angrily told the plaintiff that "if Michaela cannot be here then neither can you."

34. After the training, Dr. White approached Ms. Berger and asked why the EEOC came to the office.  Ms. Berger responded that she was unsure.  Dr. White proceeded to mockingly state "it must be due to all of the sexual harassment going on around the university." Dr. White then heatedly looked at the plaintiff.

35. Ms. Hartline then proceeded to say "so the EEOC talked about sexual harassment? That's a shame.  I guess I can't touch Ricky's butt anymore."  At this time, the plaintiff decided that he needed to schedule an appointment with Human Resources.

36. On April 27, 2018, the plaintiff scheduled a meeting with Human Resources for May 1, 2018.

37. On May 1, 2018, plaintiff met with the Director of Human Resources, Ms. Christine Watts.

38. Ms. Berger had also spoken with Ms. Watts the prior week on April 23, 2020.

39. On May 1, 2018, Ms. Watts told the plaintiff that while she would do everything to protect the plaintiff, she could not guarantee that she would be able to protect him "due to the procedures and regulations of the university."

40. The actions taken by the University employees, such as Ms. Hartline, Ms. Berger, Dr. Martin, Dr. White, and Gus White were severe and pervasive and no reasonable individual would be able to work in that environment.

41. As a result of the discrimination, Mr. Twiggs became physically and emotionally ill. He has been treating with a local therapist over the course of several months.

## VI. AMERICANS WITH DISABILITIES ACT

42. In May 2017, Plaintiff was diagnosed with the disability of Crohn's disease, which was actively and substantially limiting Plaintiff's proper digestive and bowel functions, including requiring the need for far more frequent bathroom breaks than the average person. The need occurs with severe urgency and sudden onset, making it unpredictable when the need would occur to reach a bathroom in time to avoid soiling himself.

43. After submitting his official request for reasonable accommodations, Plaintiff was subject to a barrage of hostile behavior by Dr. White. Dr. White frequently called Plaintiff's coworkers over to Plaintiff's desk to scrutinize Plaintiffs work and began overloading Plaintiff

with work. Dr. White would shout at and mock the Plaintiff. Dr. White would reprimand Plaintiff while letting the same mistakes from others go unpunished or remarked upon.

44. On several occasions, Dr. White began demanding Plaintiff could not leave his desk. She instructed the plaintiff that the desk "must always be monitored by him."

45. Mr. Twiggs did indeed maintain a presence at the front desk, however, although his official job description did not require such a presence.

46. Plaintiff was allowed to leave the desk as necessary if he had coverage for the desk, which he always did.

47. Not leaving the desk for hours on end is virtually impossible for a person who suffers from an irritable bowel disease. Plaintiff reminded Dr. White of the biological impossibility, even for a healthy person, of predicting the need for a bathroom break and going to the bathroom accordingly. The need for an extended bathroom break due to his Crohn's symptoms would necessarily involve a sudden onset of such symptoms.

48. Mr. Twiggs always had someone at the desk when he could not be there to fulfill his other duties, go to the bathroom, and go to lunch.

49. Dr. White admitted that she frequently criticized Mr. Twiggs' performance, even though she had no supervisory authority over Plaintiff.

50. Dr. White told Mr. Twiggs that he could no longer leave his desk when he needed to for any reason, including to use the bathroom.

51. Dr. White instructed Ms. Berger that, "Ricky needs to leave the desk at assigned times and that means his bathroom breaks, lunch, and to move videos."

52. Dr. White claimed that she "noticed that he was not at the desk," "frequently absent from the desk," "he left the desk unattended" and that she "had numerous performance related complaints".

53. Mr. Twiggs was concerned that if he went to the bathroom Dr. White would "write him up."

VII.   RETALIATION

54. Mr. Twiggs and others reported the events described above, both orally and in writing, to his superiors in accord with University of Holy Cross policy.

55. The University allowed Dr. White, Gus White, and Michaela Hartline the power, the means, and the ability to create a system that was incredibly hostile and not adequate to protect Mr. Twiggs.

56. After Plaintiff reported Gus White, for being abusive and aggressive, Dr. White began threatening to fire Mr. Twiggs, stating Mr. Twiggs's job description was wrong, and forcing him out of the Doctoral Program because he could not go to class, and be at the front desk at the same time.

57. On February 21, 2018, Mr. Twiggs asked Ms. Berger if it would still be ok for him to go to the bathroom and use her office as a cool down space.

58. After Mr. Twiggs reported getting sexually harassed to Ms. Berger, Dr. White and Dr. Martin attempted repeatedly to find evidence of Mr. Twiggs not fulfilling his job duties.

59. On March 5, 2018, Dr. White refused to allow Ms. Berger to help Mr. Twiggs with a suicidal client because that would be above his 'professional duties.'

60. In March of 2018, Gus White and Dr. White falsely accused Plaintiff of misplacing certain videos and yelled, humiliated, and demeaned him regarding the false claim.

61. Gus White attacked Plaintiff's character and professionalism to his classmates in the course of classroom instruction.

62. The week after the EEOC meeting at the University, Dr. White began to attack Mr. Twiggs with increased intensity by (a) increasing Plaintiff's work hours; (b) further false accusations of non-performance; (c) demanding reports that he was not trained to provide nor told that he needed within a reasonable time frame; (d) telling Mr. Twiggs that he could write the reports anyway that he wanted to and then telling him that they were wrong; (e) accusing Plaintiff of not being at the desk; and other hostile remarks to incite anxiety, fear, and, an eventual resignation.

### VIII. CONSTRUCTIVE DISCHARGE

63. Plaintiff was constructively terminated on or about May 3, 2018.

64. Ms. Watts later advised that it would probably be best if the plaintiff resigned from his position because "people outgrow places."

65. Prior to the date of constructive termination, Mr. Twiggs was encouraged to resign by numerous members of UHC faculty and staff.

66. When Mr. Twiggs reported to Human Resources that he was being forced out, Ms. Watts stated, "it would probably be best to move on."

67. At this point, the plaintiff felt that he had no option other than to leave his position. He was not afforded any protections or formal grievance process. He was essentially terminated from his position.

68. At all times relevant, Plaintiff's job description stated that he reported directly to Ms. Berger, the Director of the Counseling and Training Center. Plaintiff's job description does not require him to report to or be supervised by Dr. White.

69. Mr. Twiggs did not resign under his own volition.

70. The University of Holy Cross encouraged his resignation to preserve the system that UHC had created.

71. The conduct complained of above, including actions and omissions, proximately caused Mr. Twiggs to suffer mental, emotional and psychological damages, as well as lost compensation.

IX. CAUSES OF ACTION

**COUNT ONE:** Title VII

72. Plaintiff repeats and incorporates by reference paragraphs 24 - 49.

73. The intentional conduct and actions by Defendant through its agents constitute unlawful employment practices (sexual harassment) that discriminated against plaintiff with respect to his terms, conditions and/or privileges of employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e-2(a)(1).

**COUNT TWO:** FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

74. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

75. At all times relevant, Defendant was an "employer" and Plaintiff was an "employee," as those terms are defined by the ADA.

76. Plaintiff had a disability, within the meaning of the ADA, at the time that Defendant denied Plaintiff's reasonable accommodation request.

77. Plaintiff was able to perform his essential duties with reasonable accommodations, but the reasonable accommodations were denied by Defendant.

78. Defendant's actions as described above were malicious or with reckless indifference to Plaintiff's protected rights.

79. As a direct and proximate consequence of Defendant's violation, Plaintiff has suffered damages.

80. Plaintiffs damages include past and future lost wages, past and future lost medical healthcare benefits, past and future mental anguish, inconvenience, and loss of enjoyment of life.

81. Plaintiff seeks damages, exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT THREE:   HARASSMENT IN VIOLATION OF THE ADA**

82. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

83. Defendant's conduct with respect to Plaintiffs disability was sufficiently severe or pervasive to alter the terms or conditions of Plaintiffs employment and created a hostile or abusive work environment.

84. Defendant knew, or in the exercise of reasonable care should have known, that Plaintiff was being harassed based on his disability.

85. Defendant's actions as described above were malicious or with reckless indifference to Plaintiffs protected rights.

86. As a direct and proximate consequence of Defendant's violation, Plaintiff has suffered damages.

87. Plaintiffs damages include past and future lost wages, past and future lost medical healthcare benefits, past and future mental anguish, inconvenience, and loss of enjoyment of life.

88. Plaintiff seeks damages, exemplary damages, pre- and post-judgment interest,

attorneys' fees, and costs.

**COUNT FOUR: RETALIATION AND CONSTRUCTIVE DISCHARGE**

89. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

90. By constructively terminating plaintiff because he complained about sexual harassment, failure to accommodate and a hostile work environment defendants violated his rights under Title VII, 42 U.S.C. 1981.

**WHEREFORE**, the Plaintiff Richard Twiggs respectfully requests that this Court grant judgment in his favor and against defendants, University of Holy Cross, Michaela Hartline, Carolyn White, Talmadge "Gus" White, and Christine Watts, casting them in judgment in an amount to be shown at trial together with legal interest, attorney's fees, costs of court and all other equitable relief available.

Respectfully submitted:
*LAW OFFICE OF DESIREE M. CHARBONNET, L.L.C.*

/s/Desiree M. Charbonnet
**DESIREE M. CHARBONNET (La. Bar No. 24051)**
Attorney for Petitioner
One Canal Place
365 Canal Street, Suite 1100
New Orleans, Louisiana 70130
Phone: (504) 399-3374
Fax: (504) 561-7850
Email: dcharbonnet@desireelaw.com

*AND*

*LAW OFFICE OF BERNARD L. CHARBONNET, JR., APLC*
**BERNARD L. CHARBONNET, JR. (La. Bar No. 4050)**
**DAVID M. FINK (La. Bar No. 33550)**
One Canal Place
365 Canal Street, Suite 1100
New Orleans, Louisiana 70130
Phone: (504) 561-0996
Fax:    (504) 561-7850
Email: dfink@charbonnetlaw.com

CERTIFICATE OF SERVICE

      I hereby certify that a copy of the above and foregoing pleading has been served on all parties or their attorneys of record via the court's CM/ECF system, electronically or by placing same in the U. S. Mail, first class postage prepaid this 20th day of February, 2021.

      /s/Desirée M. Charbonnet
      DESIRÉE M. CHARBONNET